## CIRCUIT COURT NO. 2 OF BALTIMORE CITY.

Filed April 30, 1920.

THE TRADERS' AND MERCHANTS' LOAN AND SAVINGS ASSOCIATION OF BALTIMORE CITY
VS.
HYMAN ROVNER AND RACHEL ROVNER, HIS WIFE.

*Joseph Fax* for plaintiff.

*Albin Widoft,* for Universal Building, Loan and Savings Association under petition and order.

DAWKINS, J.—

This petition seeks to have a waiver of mortgage dated the 9th day of August, 1918, executed by the Universal Building, Loan and Savings Association (hereinafter called Universal) to and in favor of the Traders' and Merchants' Loan and Savings Association of Baltimore City (hereinafter called Traders) declared void. The Universal did nothing to protect itself from any alleged fraud until after the sale of the property by the Traders under foreclosure, not knowing of the alleged conspiracy on the part of certain officers of the Universal, especially on the part of Hyman Rovner, the president of the Universal, prior to that time, because they were lulled to security, thinking that the mortgage of the Universal was a first mortgage on the property. It is contended that the president (Rovner, one of the defendants) and the vice-president (Paul) conspired with the Traders to defraud the Universal, as they gave no notice at all of the waiver having been executed and because no consideration passed to the Universal for said waiver. True it is that the acts of a person occupying a confidential, fiduciary or trust position, such as an officer of an association of this character, must be subjected to close scrutiny, and such an officer must act in no way adverse to the interests of the association. The compilation of the law submitted and the citations given therein by the petitioner's counsel in the very able brief furnished are of the most satisfying character on the propositions discussed. For the industry displayed the court is very much indebted to counsel. The question in this case, however, must be largely one of fact. There is no absolute presumption of fraud against every trustee or association president, but if there be any such presumption, in this case no fraud has been shown, nor has any ultra vires act been shown. The fact seems to be that Rovner, the president, who may have been the dominating influence over his association (Universal), had a mortgage on certain property to the First Savings Association. He proceeded to secure a second mortgage from the Universal. Later he did not desire to continue this first mortgage, so applied to the Traders to take a first mortgage and pay off the then first mortgage and give a second mortgage to the Universal. This new mortgage, in addition to covering the property mentioned in these proceedings, was to cover also an additional piece of property. In order to give this new mortgage the Universal was asked to waive the effect of their mortgage, thus continuing the Universal in the same position, i. e., as a second mortgagee. In the confused condition of the minutes of the proceedings of the meeting of the board of directors of the Universal it is hard to tell what was done. It is equally difficult to tell who were the then officers at any time, as it seemed to be quite the usual thing to elect for any meeting a new person as director. It does seem to be clear, however, that Mr. Rovner was president and at one time Mr. Paul was vice-president and that Mr. Goldstone was attorney and the last named was in possession of the corporate seal. It is also clear that Mr. Paul was authorized to attend to the matter of this mortgage. The waiver may not have been specifically discussed, though Rovner says it was explained by him and understood by the Universal board, but not debated, though everybody was satisfied with the arrangement. Paul says he got authority from the president or the association. The court is satisfied that the Traders is absolutely innocent of any intention to get the waiver improperly. It simply would not have placed its mortgage if the waiver had not been delivered. It was suggested in the argument that it was the duty of the Traders to inquire as to the authorization of the vice-president to sign the paper. Surely persons dealing with corporations are not bound to do anything of the kind, especially when there is no doubt of the fact that Paul was appointed to fix the matter as shown by the minutes, and the paper was duly sealed with the seal of the association. Rovner makes a very clear statement that the matter was fixed as a favor to him by apparently giving equal security as before existed.

In the conflict of testimony I feel that I should accept Mr. Goldstone's testimony as conclusive as to the facts of the transaction. Mr. Goldstone was attorney for the Universal; he prepared the mortgage, examined the title to the property in the first instance and found a first mortgage to the First Savings Association, which he reported to the Universal and the loan of the Universal was placed as a second mortgage. He says that Vice-President Paul

executed the waiver because the loan was to the president. He prepared the waiver, having gotten authority to do so in the meeting after Rovner fully explained his reasons for wanting it, because he wanted to get rid of the non-drop interest feature of the existing first mortgage. He says that all of the Universal mortgages were second mortgages. They knew they had taken a second mortgage in this case. This frank statement by a disinterested person with no apparent interest in the outcome of these proceedings would seem to indicate that no fraud was perpetrated by any one, but that it was fully understood at the time that the papers were executed. The difficulty is that the security unfortunately did not yield enough to pay out the mortgages, but the court can not deprive an innocent party of the prior lien acquired by it under such circumstances.

The petition is dismissed.